**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                Criminal Action No. 5:14-cr-41-7

BROOKE BARMORE,

    Defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR DISCOVERY
AND REPORT AND RECOMMENDATION
CONCERNING DEFENDANT'S MOTION TO DISMISS
AND MOTION TO SUPPRESS**

This matter comes before the Court on Defendant's motion for discovery,[1] motion to dismiss,[2] and motion to suppress.[3] All three motions were filed on February 2, 2015. The United States filed a response to Defendant's motions on February 17, 2015.[4] This Court held an evidentiary hearing and argument on Defendant's motions on February 18, 2015. Defendant appeared in person and by her counsel Douglas Sughrue, Esq. The United States (hereinafter "the Government") appeared by Randolph Bernard, Esq., in person. The Government presented the testimony of Agent Christopher Barbour, Agent Mark Simala, Trooper Luther White, and Agent Alexander Espejo. Defendant testified on her own behalf. No additional testimony or evidence was presented at the hearing.

---

[1] ECF No. 146.

[2] ECF No. 147.

[3] ECF No. 149.

[4] ECF No. 155.

# I. INTRODUCTION

## A. Background

On October 7, 2014, Defendant was named in one count of a forty-four count superseding indictment charging her with perjury, in violation of 18 U.S.C. § 1621(1). The superseding indictment alleges that on August 13, 2014, Defendant made a false statement while under oath. The superseding indictment alleges that this statement was contrary to a statement Defendant made to agents on August 11, 2014. An initial appearance and arraignment were held on October 24, 2014. Defendant was released on bond subject to conditions of release. On February 2, 2015, Defendant filed three motions now pending before this Court.

## B. The Motions

1. Defendant's motion for discovery. ECF No. 146.

2. Defendant's motion to dismiss. ECF No. 147.

3. Defendant's motion to suppress. ECF No. 149.

## C. Order / Recommendations

Defendant's motion for discovery is **DENIED AS MOOT** because the stated information sought by Defendant was gained during the February 18, 2015, evidentiary hearing or does not exist.

I recommend that Defendant's motion to dismiss be **DENIED** because this Court lacks the authority to dismiss the indictment based on questions reserved for the trier of fact. I also recommend that Defendants motion to suppress be **DENIED** because based on the totality of the circumstances, Defendant was not subject to "custodial interrogation" on August 11, 2014, when she was questioned about the firearm discovered in her bedroom

## II. MOTION FOR DISCOVERY

Defendant requests this Court to order the Government to produce certain information concerning Defendant's perjury allegations. Specifically, Defendant seeks three articles of information: (1) "likely prepared" notes from agents who interviewed Defendant on August 11, 2014; (2) reports of contact between Government agents and Defendant prior to her arrest; and (3) the total number and names of the individuals who searched Defendant's home on August 11, 2014.

As to Defendant's first request, the Government contends that "there are no rough notes of agents relating to the statements of Barmore." ECF No. 155 at 3. Further, every agent witness examined by Defendant's counsel during the February 18, 2015, evidentiary hearing stated that they did not take any hand written notes during their August 11, 2014, interview of Defendant. The Court cannot require the Government to produce documents that do not exist. *See Susko v. City of Weirton*, No. 5:09 CV 1, 2011 WL 98557, at *4 (N.D.W. Va. Jan. 12, 2011). Concerning Defendant's second request, Defendant's counsel offered during the evidentiary hearing that he was satisfied with information previously provided by the Government.

Therefore, the final pending discovery issue is Defendant's third request. Concerning this request, the Government alleges that the report of investigation in this case lists the names of all the agents and police who participated in the search of Defendant's home. Further, during the evidentiary hearing, Defendant's counsel had the opportunity to examine four Government participants of that search. The information sought in Defendant's third discovery request could have been gathered from testimony or the report of investigation. Therefore, Defendant's motion for discovery is **DENIED AS MOOT**.

### III. MOTION TO DISMISS

*A. Contentions of the Parties*

In this motion, Defendant argues that "Count 44 of the [superseding] indictment is invalid on its face" and seeks this Court to dismiss the Government's allegation of perjury. ECF No. 147 at 3. Defendant argues that one of the three legal elements of perjury requires the perjury to concern "a material matter." ECF No. 148 at 2. Defendant contends that even if her previous testimony were false, her statement cannot constitute perjury because the statement was "distinctly immaterial . . . to the outcome of the proceedings" where the alleged false statement took place. The Government argues that the alleged false statement was material to the proceedings.

*B. Discussion*

A defendant has committed perjury "when testifying under oath (1) gave false testimony; (2) concerning a material matter; (3) with the willful intent to deceive (rather than as a result of confusion, mistake, or faulty memory)." *United States v. Jones*, 308 F.3d 425, 428 n. 2 (4th Cir. 2002). The relevant element in this case is the second element, whether Defendant's alleged false statement concerned "a material matter." As the Fourth Circuit has explained, "[a] defendant could, for example, give false testimony about a non-material matter, or he might lack the requisite mens rea because her false testimony was the result of confusion, mistake, or faulty memory." *United States v. Perez*, 661 F.3d 189, 192-93 (4th Cir. 2011) (internal quotation marks omitted). "[A] concealment or misrepresentation is material if it has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed." *Kungys v. United States*, 485 U.S. 759, 770 (1988) (internal quotation marks omitted).

In this case, the alleged perjury took place during the detention hearing of LeDon Gaither

held on August 13, 2014. Defendant testified in support that Mr. Gaither was not a flight risk or a danger to the community. While testifying, Defendant stated she was not aware how a gun entered her home. Defendant's perjury charge stems from this answer, allegedly in contrast to a statement she provided to agents on August 11, 2014, that Mr. Gaither brought the gun into her house. Defendant maintains that her allegedly false statement during the August 13, 2014, detention hearing could not be perjury because her answer was not "capable of influencing" the Court's decision as to the detention of Mr. Gaither. However, a question as to whether a false statement was material is a mixed question of law and fact typically resolved by juries. *See United States v. Gaudin*, 515 U.S. 506, 512 (1995) ("Indeed, our cases have recognized in other contexts that the materiality inquiry, involving as it does "delicate assessments of the inferences a 'reasonable [decisionmaker]' would draw from a given set of facts and the significance of those inferences to him ... [is] peculiarly on[e] for the trier of fact.") (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976)). Defendant is free to attack the Government's case against her at trial, but this Court lacks the authority to dismiss the indictment based on questions reserved for the trier of fact. Therefore, the undersigned recommends Defendant's motion to dismiss be **DENIED**.

## IV. MOTION TO SUPPRESS STATEMENTS

*A. Findings of Fact*

On August 11, 2014, agents and officers (collectively "the agents") approached Defendant's residence to execute an arrest warrant for Mr. Gaither and search warrant of Defendant's home. At 7:40 a.m., Mr. Gaither, Defendant, and their infant child were outside when agents approached. At that time, between five and ten vehicles arrived and parked alongside Defendant's home. Agents exited the vehicles, drew their weapons, and ordered Mr. Gaither to lay down. Mr. Gaither complied,

and was quickly arrested.

The agents asked Defendant to secure her dogs who were barking loudly inside her home. Defendant entered her home by herself, and locked the dogs in cages near the kitchen. The agents began to search Defendant's home. After securing the dogs, Defendant went back outside and collected her child who was still inside one of Defendant's vehicles. According to all the testimony, Defendant was never again separated from her child. During the search, agents offered Defendant a private room if she needed to breastfeed her child. At certain times during the search, Defendant was standing alone, but was not permitted to access rooms of the house being searched.

Defendant owns two vehicles. According to the search warrant, the agents were permitted to search a Lincoln, one of Defendant's two vehicles. The second vehicle, a Buick, was not subject to the search warrant. Defendant was unable to access her cell phone and purse because they were located in the Lincoln.

The agents informed Defendant that she was free to leave while the agents conducted their search. Defendant first decided to walk two blocks to a relative's house, but decided not to because Defendant was not sure if her relative would be home. During the search, one agent asked Defendant to follow him to the back deck of the home. There, at least one agent questioned her about her relationship with Mr. Gaither. Agents testified that Defendant never appeared visibly shaken, or at any time crying or screaming. One agent testified that Defendant was pleasant to speak with during the search.

At some time during questioning on Defendant's back deck, another agent emerged and declared he found a gun in Defendant's bedroom. Defendant was asked if she was aware that there was a gun in her bedroom. In conversation with Defendant, the agents expressed that they did not

believe what she said about her knowledge of the gun. Again, Defendant was told that she could leave.

Once Defendant's Lincoln was searched, the agents gave Defendant her purse and cell phone. Defendant left the house to stand outside and attempt to call a relative. No one answered Defendant's calls. It began to rain and one agent encouraged her to come back onto the porch. At this point, Defendant was standing outside with her child. Defendant testified that she believed the agent wanted her to come back onto the porch to avoid the rain, not to be questioned further.

While on the porch, one agent presented Defendant with an evidence bag to sign as a witness. Here, several agents asked Defendant about various drugs found in the house. The agents explained that with her help, they would not have to "tear up" her home.

One agent asked Defendant if they could search her Buick. Defendant consented. An agent asked Defendant for her contact information so they could contact her when the agents have completed their search. Soon after, Defendant and her child left the home in her Buick. Later in the day, Defendant was contacted that the agents had completed their search and had left a copy of the search warrant inside her home.

### *B. Contentions of the Parties*

In Defendant's motion to suppress, she argues that her statements about the gun located in Defendant's bedroom should be suppressed because she was interrogated, while in custody, without receiving *Miranda* warnings. Defendant contends she was overwhelmed by the large presence of agents arriving, arresting the father of her child, and subsequently searching her entire home. She claims the agents ordered her not to leave. After answering agents' inquires about the gun located in Defendant's bedroom, Defendant alleges the agents questioned her "as though she was a liar."

ECF No. 150 at 3. Defendant claims that she was only able to access her car not subject to the search warrant once she gave consent for the agents to search the car. Defendant claims these facts rise to the level of a custodial interrogation and she was never given *Miranda* warnings during her conversation with agents. The Government argues that "[w]hen all the facts are viewed objectively, [Defendant] was clearly not 'in custody.'" ECF No. 155 at 9.

*C. Discussion*

"As a prophylactic safeguard . . . the Supreme Court has required law enforcement to inform individuals who are in custody of their Fifth Amendment rights prior to interrogation." *United States v. Hashime*, 734 F.3d 278, 282 (4th Cir. 2013) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). "This inquiry is an objective one, and asks whether a reasonable [person] in the suspect's position would have understood h[er] situation to be one of custody." *Id.* (internal quotations omitted). "The test, in other words, involves no consideration of the 'actual mindset' of the particular suspect subjected to police questioning." *J.D.B. v. N. Carolina*, 131 S. Ct. 2394, 2402 (2011). Because the test is objective, "the totality of the circumstances surrounding the consent must be examined." *United States v. Elie*, 111 F.3d 1135, 1144 (4th Cir. 1997). In *United States v. Weaver*, 282 F.3d 302, 310 (4th Cir. 2002), the Fourth Circuit held:

> In applying the totality of the circumstances test, courts look to numerous factors including the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the officer's statements to others present during the encounter, the threatening presence of several officers, the potential display of a weapon by an officer, and the physical touching by the police of the citizen.

*Id.* at 310. "Also pertinent are the suspect's isolation and separation from family, and physical restrictions." *Id.* at 283 (internal citations omitted). Further, "[a]lthough a statement that the

individual being interrogated is free to leave may be highly probative . . . such a statement is not talismanic or sufficient in and of itself to show a lack of custody." *Id.* at 284 (internal quotation marks omitted)

However, for a statement to be voluntary, the circumstances surrounding the interrogation or interview need not be entirely free from intimidation. *See United States v. Braxton*, 112 F.3d 777, 783 (4th Cir. 1997); *United States v. Pelton*, 835 F.2d 1067, 1072 (4th Cir. 1987). "The existence of a threat or an implied promise does not automatically render a confession involuntary. The proper inquiry is whether the confession was 'extracted' by the threats or implied promises, 'however slight.'" *Braxton*, 112 F.3d at 783 (quoting *Hutto v. Ross*, 429 U.S. 28, 30 (1976)). Furthermore, the fact that guns are drawn does not, by itself, render any subsequent statement "involuntary." *Elie*, 111 F.3d at 1145-46 (prescribing factors to consider in context of "totality of the circumstances surrounding each statement"); *United States v. Seni*, 662 F.2d 277, 281-82 (4th Cir. 1981).

In this case, based on the totality of the circumstances, the undersigned finds that Defendant was not subject to "custodial interrogation" at the time she was questioned about the firearm discovered in her bedroom. In this case, at 7:40 a.m., agents arrived to Defendant's home, arrested Mr. Gaither, and asked Defendant to secure the dogs in her home. Similar to *United States v. Hargrove*, 625 F.3d 170 (4th Cir. 2010), agents in this case were armed, briefly "directed [Defendant's] actions during the initial safety sweep of the residence, and conducted a safety pat down of [Defendant]." *Id.* However, afterwards, like in *Hargrove*, "there is no evidence in this case that a custodial level of control extended beyond the initial entry by the search team." *Id.* at 179. After securing her dogs, Defendant was never separated from her child, and was only restricted from rooms where the agents were conducting searches permitted by their search warrant.

9

Once the initial safety sweep was completed, agents holstered their weapons and informed Defendant she was free to leave. In fact, Defendant intended to leave and go to a relative's home two blocks away. However, Defendant stayed at the residence because she was not able to confirm that her relative was home that morning. At this point, agents asked to speak with Defendant on her back porch. During this conversation, another agent entered the porch and stated they found a weapon in her bedroom. An agent asked Defendant if she knew that there was a gun in the room. Defendant's answer to this question and subsequent testimony at the August 13, 2014, detention hearing of Mr. Gaither led to Defendant's perjury charge.

Here, unlike in *United States v. Colonna*, 511 F.3d 431, 435 (4th Cir. 2007), a case cited by Defendant, Defendant was told multiple times that she was free to leave. Beyond testimony, Defendant's freedom to leave is demonstrated by her actions. Defendant initially intended to leave and stay with a relative two blocks away. Later, she stood outside and only entered the home again when it began to rain. Lastly, Defendant finally left in her Buick before agents finished their search of her home.

Additionally, the undersigned finds little evidence to support that Defendant was threatened during her conversations with agents. Other than from an initial safety pat down, Defendant was never grabbed or handcuffed. As stated previously, "[t]he proper inquiry is whether the confession was 'extracted' by the threats . . . 'however slight.'" *Braxton*, 112 F.3d at 783. In this case, nothing in the record suggests that Defendant was threatened to speak about the gun located in Defendant's bedroom.

Like in *Hargrove*, Defendant "was permitted to move about h[er] house so long as doing so did not interfere with the ongoing search." 625 F.3d at 181. Further, testimony reveals that

10

Defendant's conversations with agents were largely friendly. Agents were only "firm" in doubting Defendant's answer as to why a gun was located in her bedroom. Defendant never asked for the interview to end or objected to any questions. Also, unlike *Hashime*, where the defendant was questioned for three hours, Defendant was questioned for less than an hour. 734 F.3d at 281.

Although no fact by itself is dispositive of the custodial inquiry, the combination of facts that Defendant was free to leave, Defendant left the home on multiple occasions, engaged in "pleasant" conversation with agents, was with her child at all times, and even offered a private room to breastfeed support that the totality of the circumstances that Defendant would have understood that she was not "in custody" during her conversation with Defendant.

## V. ORDER AND RECOMMENDATION

For the reasons stated above, Defendant's motion for discovery, ECF No. 146, is **DENIED AS MOOT**.

The undersigned recommends that Defendant's motion to dismiss, ECF No. 147, be **DENIED** and Defendants motion to suppress, ECF No. 149, be **DENIED**.

Filing of objections does not stay this Order.

Because trial is imminent, any party who appears *pro se* and any counsel of record, as applicable, may, by **February 27, 2015**, file with the Clerk of the Court written objections **identifying the portions of the Order or Report and Recommendation** to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: February 19, 2015                    /s/ *James E. Seibert*
                                            JAMES E. SEIBERT
                                            UNITED STATES MAGISTRATE JUDGE