IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

       Plaintiff,

v.                       Criminal Action No. 5:14CR41-07
                                     (STAMP)
BROOKE BARMORE,

       Defendant.

## MEMORANDUM OPINION AND ORDER
## ADOPTING AND AFFIRMING REPORT AND RECOMMENDATION

### I. Procedural History

    The defendant, Brooke Barmore ("Barmore"), was indicted in a forty-four count superseding indictment charging her with perjury in violation of 18 U.S.C. § 1621(1). The indictment alleges that Barmore made a false statement about the ownership of a gun by her co-defendant, LeDon Gaither ("Gaither"), while under oath during a August 13, 2014 detention hearing for Gaither, that varied from a statement she had given law enforcement agents on August 11, 2014 during the search of her home after Gaither's arrest.

    Barmore filed a motion to dismiss the perjury count and a motion to suppress the statements she made on August 11, 2014. The government timely filed a response. United States Magistrate Judge James E. Seibert then held a hearing on Barmore's motions. Following this hearing, the magistrate judge issued a report and recommendation which recommended that this Court deny both motions. The defendant timely filed objections.

A.  Background[1]

On August 11, 2014, around 7:40 a.m., ten to twenty agents and officers ("agents") arrived at Barmore's residence to execute an arrest warrant for Gaither and search warrants for Barmore's residence and a Lincoln SUV ("SUV") that was parked at Barmore's residence.  Gaither, Barmore, and their infant daughter were outside the residence placing their daughter in the SUV when the agents arrived.  The agents arrived in five to ten vehicles, parked alongside Barmore's residence, and blocked both the SUV and a Buick (both owned by Barmore).  Upon exiting, the agents drew their weapons and ordered Gaither to lie down.  Gaither complied and was quickly arrested.  Barmore was neither told to lie down, handcuffed, or searched at that time.  Barmore was subjected to a pat-down.

The agents then requested that Barmore secure her dogs inside her home.  She did so, by herself, without an agent escort.  Upon returning outside, Barmore was able to retrieve her daughter from the SUV.  Barmore was then allowed to bring her daughter over to Gaither, who was now in a patrol car, to allow Gaither to kiss the

---

[1]The findings of fact in this section are based on the following: (1) the arraignment and detention hearing transcript from August 13, 2014 (ECF No. 53 in Gaither, 5:14CR41-01); (2) the detention hearing transcript from October 10, 2014 (ECF No. 145 in Gaither); (3) Barmore's affidavit, filed on February 3, 2015 (ECF No. 151); and (4) the motions hearing transcript from February 18, 2015 (ECF No. 181).

daughter goodbye.  Barmore was only separated from her daughter during the time she went inside the home to secure the dogs.  At this time, the agents had entered the home and their guns remained holstered during the rest of the search.  Further, the agents' vehicles were moved so that the Buick was no longer blocked.

Barmore was then told that she could leave and was not under arrest.  At this time, Barmore's purse and cell phone were still inside the SUV which was listed in the search warrant.  Barmore then decided she would walk two blocks to a relative's home. However, she decided not to do so because she was unsure if the relative would be home.

Barmore began to ask questions about what was going on and was told by an agent to come inside and that she would have to wait around for those answers.  While inside, Barmore was offered a private bedroom if she needed to breastfeed her child.  Further, one agent engaged in small talk with Barmore about her daughter and about the agent's children.  While the search was ongoing, an agent asked Barmore to follow him to the back deck of the home.  There, Barmore was accompanied by two agents who asked her questions about her background, about a gun that was found in the home, and about any drugs or money that may be in the home.

During questioning, a third agent briefly came out to the back porch to declare that a gun had been found in the home.  Further, a fourth agent, who had spoken to Barmore earlier in the home, came

3

out briefly and paused to listen to the conversation between Barmore and the two agents. This agent stood away from the table where the conversation was taking place and then left to go into the backyard.

During the conversation on the back porch, one agent asked Barmore if she was aware that there was a gun in her bedroom. The agent testified that Barmore stated the gun was brought into the home by Gaither a couple of months before and that she knew it was in the home but told Gaither to get rid of it. Further, the agent asked Barmore if she knew that Gaither had conducted drug deals while holding their daughter. Barmore stated that she did not know this. The agent then told Barmore that Child Protective Services ("CPS") could be involved at some point depending on what Barmore's involvement was with Gaither's activities. The agent also informed Barmore that if they found out that she was involved with Gaither's drug activity she could end up in prison. This questioning lasted approximately ten to twenty minutes and the agent said that he was firm when speaking with Barmore.

Thereafter, Barmore went back through her home to the front porch. At this point the SUV had been searched and Barmore was able to retrieve her purse and cell phone from the SUV. The purse was subsequently searched. It began to rain and an agent suggested that Barmore return to the porch. Barmore testified that the agent

suggested she come back on the porch because of the rain, not for more questioning.

While on the front porch, Barmore was presented with an evidence bag with money in it that was found in the home. An agent requested that she sign the bag as a witness that the money had been taken from her home. Barmore was then asked by more than one agent about drugs that had been found in the home. Barmore stated she did not know about any drugs. The agents expressed a belief that she was not telling the truth and Barmore was told that with her help they would not have to "tear up" her home.

Barmore then requested that she be able to leave in the Buick. An agent requested consent to search the Buick, Barmore consented to the search. Barmore was then asked to provide contact information so the agents could contact her when the search was completed. She then left in her Buick. Later, Barmore was contacted by an agent and told that the search of her home was complete and that a search warrant had been left.

Gaither's detention hearing, two days after the search, was used to determine whether Gaither was a flight risk or a danger to the community. Barmore testified, in Gaither's favor, that she did not know about the gun that was found in her home and that she did not know how it got there. Barmore stated that she only found out about the gun when agents told her about it. The magistrate judge found that Gaither should be detained as he was a danger to the

community if released.  During Barmore's motions hearing, Barmore testified that she understood that the questions about Gaither's gun possession, at the detention hearing, would have an impact on whether or not Gaither was going to be released.

B.    Motion to Dismiss

Barmore argues in her motion to dismiss that the statements she made regarding the presence of a gun in her home after Gaither's arrest did not influence the decision to detain Gaither and were not material for a perjury conviction.  Barmore asserts that her testimony was unrelated to the decision of whether Gaither was a danger to the community because the magistrate judge's stated reasoning for detaining Gaither only involved Gaither's extensive criminal history.

In response, the government argues that Barmore's testimony was relevant to a determination of whether or not Gaither is a danger to the community.  Moreover, the government asserts that Gaither and Barmore acknowledged the importance of the gun in a recorded jail call.  Thus, the government asserts that this motion is without merit.

In his report and recommendation, the magistrate judge found that the motion to dismiss should be denied as the question of whether a false statement was material is a mixed question of law and fact typically reserved for juries.  Thus, the magistrate judge found that he lacked authority to dismiss the perjury count.

In her objections, Barmore agrees that the issue as to the motion to dismiss is a mixed question of fact and law. However, Barmore contends that the facts in this case, as they apply to the motion to dismiss, are clear and can be applied by this court at this stage. Further, Barmore contends that her conversation with Gaither, on the recorded jail call, shows that he was displeased with her testimony and that her testimony did not affect the magistrate judge's detention determination.

C.    Motion to Suppress

In this motion, Barmore contends that her statements were misinterpreted or misremembered by the agents who questioned Barmore. Further, Barmore argues that her statements should be suppressed as she was subjected to custodial interrogation without being administered Miranda[2] warnings. Barmore asserts that although she was told she could leave, the totality of the circumstances suggested otherwise and that a reasonable person would not have felt as though he could leave. Barmore contends that she was in custody and thus the elicitation of statements from her was violative of her constitutional rights.

In response, the government notes that Barmore was told she could leave and did not have to answer questions; the questioning took place on Barmore's back deck; and the questioning was brief. As to the time of day when arrest and search took place, the

_____

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

government argues that the time is not in Barmore's favor as Barmore was in the front yard when agents arrived and stated she was getting ready to leave to get her car serviced. Further, the government notes that Barmore was told she could leave after securing her dogs and decided to stay. Additionally, the government asserts that the statements made by Barmore were not inculpatory as to Barmore but only as to Gaither. Thus, the government questions whether <u>Miranda</u> is even applicable.

In his report and recommendation, the magistrate judge found that there is no evidence that the agents' presence was custodial, as to Barmore, after the initial sweep of the residence and pat-down of Barmore. The magistrate judge relied on the fact that Barmore was told multiple times she could leave, had planned to leave but then decided to stay, stayed outside the home until it started to rain, and ultimately left in her vehicle while the search of the home was ongoing. Moreover, the magistrate judge found that the record does not support Barmore's assertions that she was threatened in anyway during her conversations with the agents. Finally, the magistrate judge noted that this case is unlike the United State Court of Appeals for the Fourth Circuit's decision in favor of the defendant in <u>United States v. Hashime</u>, 734 F.3d 278 (4th Cir. 2013), where the defendant was questioned for three hours, Barmore was questioned for less than an hour.

In her objections, Barmore contends that the magistrate judge incorrectly used the test for the voluntariness of a statement rather than the test to be applied when <u>Miranda</u> warnings were not given.  This is important, Barmore asserts, because the test for voluntariness requires a consideration of the characteristics of the defendant and the magistrate judge thus incorrectly relied on the characteristics and demeanor of Barmore.  Additionally, Barmore contends that the test for voluntariness requires a less stringent level of police firmness than that for a finding that a defendant was in custody at the time of interrogation.  Thus, Barmore argues that the officer's conduct on August 11, 2014 was enough to rise to the custodial level.

Further, Barmore argues that she should be found to have been in custody given the influence of the gun itself being found and Barmore being informed that weapons had been found in her home. Barmore asserts that when she was told a weapon was found in the house, agents were blocking her exit and a reasonable person would not have felt as though he could leave.  Finally, Barmore contends that the finding that the officers did not believe Barmore's statements at the home, and that she did not know the gun was there, supports her version of events.  Thus, Barmore contends that the officers' testimony that Barmore knew that Gaither had brought the gun into the home, when they later stated they did not believe her statements, supports Barmore's version.

## III.  Applicable Law

Under the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(B), a magistrate judge may be designated by a district court to consider motions to suppress evidence and statements as unconstitutionally obtained.  After the magistrate judge has considered such a motion, he must submit '"proposed findings of fact and recommendations for the disposition.'"  <u>Camby v. Davis</u>, 718 F.2d 198, 199 (4th Cir. 1983).  Parties are entitled to file written objections to the findings and recommendations of the magistrate judge, and if a party chooses to object within the 14-day period allotted by the Act, the district court shall make a de novo review of the findings and recommendations objected to.  <u>Id.</u> and 28 U.S.C. § 636(b)(1)(C).  Any findings to which no party objects are upheld by the district court unless "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(C).

Here, the defendant filed objections to the magistrate judge's report and recommendation.  All findings challenged by these objections will be reviewed de novo.

## IV.  Discussion

A.  <u>Motion to Dismiss</u>

This Court adopts the magistrate judge's finding that the question of materiality is one that must be left for the trier of fact.  Barmore argues that it is clear in this case, and undisputed, what statements are at issue and what issue the

magistrate judge was considering at the detention hearing. Thus, Barmore asserts that this is not a case where <u>United States v. Gaudin</u>, 515 U.S. 506, 512 (1995), should be applied. However, a question as to whether a false statement was material is a mixed question of law and fact which is generally resolved by a jury. <u>See</u> <u>Gaudin</u>, 515 U.S. at 512 (citation omitted). The question of materiality in this case is just that. Thus, this Court finds that the motion to dismiss should be denied.

In the alternative, if the principle stated in <u>Gaudin</u> does not apply, this Court finds that Barmore's statement was material to the magistrate judge's determination at the detention hearing. Barmore was testifying on Gaither's behalf and knew that Gaither's release, at that time, would be based on the magistrate judge's finding as to Gaither's potential danger to the community. <u>See</u> ECF No. 181 at 175. The possession of a gun is a fact that the magistrate judge could consider in finding that a person is a danger to the community. <u>United States v. Rodriquez-Romero</u>, 18 F. Supp. 3d 116 (D. Puerto Rico 2014) (finding it was proper to consider at a detention hearing the agent's retrieval of firearms at the time of the defendant's arrest where the defendant was charged with drug trafficking and felon in possession offenses).

Barmore's statements were (1) in reference to the possession or lack of possession of a gun by Gaither, and (2) made during the detention hearing to decide whether Gaither was a danger to the

community.  <u>Gaudin</u>, 515 U.S. at 512 (requiring that a court consider two subsidiary issues in considering materiality of a statement, (1) what statement was made, and (2) what decision was being made by the deciding body).  They were, therefore, material. Moreover, Barmore testified that she knew the statements she made about Gaither's possession of a gun would affect the magistrate judge's detention decision.  As such, even if this Court could make a determination as to materiality, Barmore's motion to dismiss would still be denied.

B.  <u>Motion to Suppress</u>

Barmore argues that based on the totality of the circumstances and an objective view of what occurred at her home after Gaither's arrest, she was subjected to a custodial interrogation without being given a <u>Miranda</u> warning.  Further, Barmore contends that the magistrate judge's finding should not be followed because the magistrate judge used a subjective test in making his determination that Barmore was not in custody.  The government contends that the underlying circumstances do not support a finding that Barmore was in custody at the time she was questioned.

The procedural rules that must be followed under the mandates of <u>Miranda</u> only attach in situations of "custodial interrogations." <u>United States v. Sullivan</u>, 138 F.3d 126, 130 (4th Cir. 1998). Custodial situations arise under <u>Miranda</u> either if a person has been arrested or if, "under the totality of the circumstances, a

suspect's freedom of action is curtailed to a degree associated with formal arrest." United States v. Hargrove, 625 F.3d 170, 178 (4th Cir. 2010) (quoting Berkemer v. McCarty, 468 U.S. 420, 440 (1984)) (internal quotation marks omitted); see also Stansbury v. California, 511 U.S. 318 (1994).

This inquiry is an objective test, asking "whether a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." Hashime, 734 F.3d at 282 (alteration in original) (quoting United States v. Jamison, 509 F.3d 623, 628 (4th Cir. 2007)) (internal quotation marks omitted). "Facts relevant to the custodial inquiry include, but are not limited to, 'the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant.'" Id. at 283 (quoting United States v. Day, 591 F.3d 679, 696 (4th Cir. 2010)).

1.  Time, Place, and Purpose

First, as to the time that the arrest and later questioning took place, it is clear that the time weighs against Barmore's motion.  In this case, the agents arrived at the home at approximately 7:40 a.m. when Gaither, Barmore, and their daughter were all outside the home and dressed; and it was daylight. Cf. Hashime, 734 F.3d at 280 (finding that there was a custodial

13

interrogation where defendant was awakened naked from bed and marched out of his house in boxer shorts). Thus, the timing of the arrest and later questioning supports a finding that the defendant was not in custody.

Additionally, the questioning on the back porch, took anywhere from five to twenty minutes based on testimony from the agents and Barmore. Even if this Court were to adopt a finding that the questioning took twenty minutes, that would be a factor that would go against a finding that Barmore was in custody. United States v. Morris, No. 1:13CR1691, 2014 WL 1281237 at *628 (M.D.N.C. Mar. 27, 2014) (finding that questioning of forty-five minutes to an hour was a factor that weighed against a custody finding contra three hours in both Hashime and United States v. Colonna, 511 F.3d 431, 435-36 (4th Cir. 2007)). As such, this factor also weighs in favor of a finding that Barmore was not in custody.

Further, the very fact that the conversation took place at a table at Barmore's residence cuts against a finding that the defendant was in custody. See Oregon v. Elstad, 470 U.S. 298, 315 (1985); and Hargrove, 625 F.3d at 178. In this case, Barmore was questioned at a table on her own back porch where she could exit back into the home (as she did after the conversation ended). Additionally, although she was not free to roam wherever she wanted in the home, she was told that she could access any room in the home with an escort and told that privacy would be provided if she

needed to breastfeed. Finally, she was left alone at times on her front porch. Thus, the fact that the conversation took place at a table at Barmore's residence and Barmore was given reasonable freedom of movement during the search, the "place" factor weighs against a finding that a custodial interrogation took place.

Finally, under this category, the purpose of the questioning of Barmore must be reviewed. In this case, the purpose of the questioning was not to build a case against Barmore, but rather was to obtain information from Barmore about Gaither's drug distribution activities and any knowledge Barmore had about those activities. Barmore contends, however, that the purpose of the questioning was not apparent to her and would not have been apparent to a reasonable person. Barmore asserts that the agents told her that she would be placed in the same place as Gaither (prison) if she did not tell the truth and that her children would be placed in CPS. Further, Barmore contends that she could tell that the agents did not believe her.

The agent testified that he told Barmore that if they found out she was involved that she could go to prison. Additionally, the agent testified that he told Barmore that CPS may get involved in this case because Gaither had conducted a drug transaction while holding their daughter. The agent testified that this statement was meant to inform Barmore of the severity of Gaither's actions.

However, the agent stated that he never viewed Barmore as a suspect and did not view the questioning as a custodial interrogation. Further, up to the point where Barmore was told of the possibility of prison if she was involved or that CPS may be involved, and after, Barmore was told she could leave and was not under arrest. Moreover, Barmore was free to move about the home, with reasonable restrictions, and had even started to leave at one point but chose not to leave. Finally, the CPS statement was only made after the agent informed Barmore of Gaither's actions in relation to her daughter.

In determining whether the purpose of questioning weighs in favor of a finding that a defendant was in custody, the following has been set forward by the United States Supreme Court:

> An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned . . . . Those beliefs are relevant only to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her "freedom of action." . . . Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest. The weight and pertinence of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case. In sum, an officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected

16

>    how a reasonable person in that position would perceive
>    his or her freedom to leave.

Stansbury, 511 U.S. at 325 (internal citations omitted).  In this case, this factor, although a close call, weighs against a finding that Barmore was in custody during the questioning at her home. Here, the interrogation began so that the agents could collect further information on Gaither, not Barmore.  Although the agent did convey to Barmore that there was a possibility of her going to jail, that possibility was couched with the agent's statement that it was only a possibility if they found out Barmore was involved and several statements to Barmore that she was free to leave and not under arrest.  In addition, the statement regarding CPS was tied to events involving Gaither and his actions regarding their daughter.

Moreover, Barmore initially made plans to leave but decided to stay because she did not want to walk two blocks to a relative's home.  Barmore was also free to move through the house which is shown by her presence on the front porch without the accompaniment of an agent and her ability to go through the house without an agent after being questioned on the back porch.  Hence, Barmore was "free to come and go" and had the "freedom of action" that would weigh against a finding that a reasonable person would have believed the purpose of the questioning was to eventually arrest that person or to build a case against that person.  Id.

2. <u>Words, Tone of Voice, and Demeanor of the Agents</u>

a. <u>Words of the Agents</u>

In this case, there is an issue as to the agents' statements that (1) Barmore was free to leave and not under arrest before questioning began and (2) a gun had been found before questioning began as to the gun.

i. <u>Free to Leave/Not Under Arrest Language</u>

Barmore asserts that although she was told she was free to leave and was not under arrest, the totality of the circumstances would lead a reasonable person to feel as though those statements were not true. Barmore contends that this is so because she was told to wait around by one agent, then questioned by that agent and another agent, was told she would need to be escorted if she needed to go to certain areas of the home, and was not given access to her cell phone or purse which was in the SUV.

A statement that one is not under arrest or free to leave is not dispositive. See <u>Colonna</u>, 511 F.3d at 435-36 (holding that informing a suspect that he is not under arrest is a factor, but insufficient standing alone, to sustain a ruling that the questioning was non-custodial). However, a statement that a defendant is free to leave is "highly probative of whether, in the totality of the circumstances, a reasonable person would have reason to believe he was 'in custody.'" <u>Hargrove</u>, 625 F.3d at 180. This is because a statement that a defendant is free to leave "goes

beyond the merely implied permission to leave" that accompanies a statement that one is not under arrest. Id.

Statements that a defendant is free to leave and not under arrest are bolstered by circumstances that show that "the limitation on [a defendant's] freedom of movement was minor." Hargrove, 625 F.3d at 181. Limitations on movement are minor where "evidence in the record show[s] that [the defendant] was permitted to move about his house when it did not interfere with the ongoing search . . . [and the defendant's] conduct was [not] curtailed to a 'degree associated with formal arrest.'" Id.

In this case, Barmore was told several times that she was not under arrest and that she was free to leave. Barmore initially planned to leave but then decided not to walk the two blocks to a relative's home in case the relative was not here. Then, when she started asking questions about the search, she was told that she would have to wait for those answers while the search was underway and come inside. Additionally, Barmore was told that she would be given privacy if she needed to breastfeed and that she could access other areas of the home if escorted, as the search of the home was ongoing. Further, Barmore was told that she could not access the SUV, but only after she was allowed to get her daughter out of the vehicle. Barmore was later allowed to access the SUV to obtain her purse when the search of the SUV concluded. As such, the evidence shows that Barmore had the ability to move about her home but that

certain constraints were placed on that ability so that her movements would not interfere with the ongoing search. This factor therefore weighs against a finding that a reasonable person would not have felt as though she was free to leave and was not under arrest, and thus was not in custody.

ii. <u>Statement that a Gun Had Been Found</u>

In this case, Barmore was confronted by the agents with the fact that a gun had been found in her home after she was asked to accompany two agents to the back porch. Barmore argues that this fact should weigh in favor of a finding that she was in custody. However, a defendant is not in custody merely because a defendant is confronted with a gun that is found during a search. <u>United States v. Beard</u>, 119 F. App'x 462, 467 (4th Cir. 2005) (where defendant had been questioned about a shotgun found in a vehicle outside of his home) (citing <u>Beckwith v. United States</u>, 425 U.S. 341, 347 (1976) (holding that interview with IRS investigators at home of suspect during which investigators informed suspect that they were investigating his tax records was not custodial); <u>Davis v. Allsbrooks</u>, 778 F.2d 168, 172 (4th Cir. 1985) (holding that interview at police station where officers showed suspect pictures of crime scene was not custodial) (other citation omitted)).

Furthermore, the facts in this case weigh even heavier against a finding of custody than in <u>Beckwith</u> because unlike the defendant in <u>Beckwith</u>, the agent in this case merely stated that a gun had

been found rather than showing Barmore the gun and then questioning her with the gun present. Thus, an agent stating that a gun had been found and questioning Barmore based on that discovery is not enough to support a finding that the defendant was in custody.

      b.   Tone of Voice and Demeanor

The agents that questioned Barmore were firm in their questioning but did not yell or raise their voice when speaking with Barmore. Moreover, one agent had a discussion with Barmore about his own children and Barmore's daughter. Further, there is nothing to suggest that the agents' demeanor was threatening to Barmore.

On the other hand, Barmore argues that when being questioned on the back porch, the presence of the third agent blocked her in and would have made a reasonable person feel as though he was not able to leave. However, the testimony given by the different actors involved in this case shows that the third agent was only on the back porch briefly and then left the porch. This, coupled with the otherwise more relaxed atmosphere of the discussion occurring at Barmore's home, at her own table, weighs in favor of a finding that a reasonable person would not have felt as though he was in custody.

      3.   Presence of Multiple Officers and Display of Weapons

Barmore contends that the presence of multiple officers and the initial display of weapons could lead to a finding that Barmore

was subjected to a custodial interrogation. However, the Fourth Circuit, in Hargrove, found that "agents ha[ve] authority to secure the premises and detain the occupants temporarily in order to secure the site for conducting a search pursuant to a valid search warrant." Hargrove, 625 F.3d at 179 (citations omitted). Additionally, where there is no evidence that such a high level of custodial control extended beyond the initial safety sweep, a custody finding will not be supported. Id.

The facts in this case almost mirror those present in Hargrove. In Hargrove, the defendant was initially confronted with armed agents who completed a safety sweep of the home and a brief pat-down of the defendant. Id. Thereafter, the defendant was questioned at his kitchen table, without handcuffs or weapons being drawn, by two agents, and after being told that he was free to leave and was not under arrest. Id. In this case, although Barmore was initially met with several agents who had their weapons drawn and subject to a brief pat-down; the weapons were holstered thereafter, the questioning of Barmore was by two agents without their weapons drawn, Barmore was not in handcuffs, and she was told several times that she was free to leave and was not under arrest. As such, this factor weighs against a finding that Barmore was subject to a custodial interrogation.

4.  <u>Physical Contact</u>

Other than the initial pat-down of Barmore during the sweep of the area around the home and the home itself for safety reasons, no physical contact with Barmore occurred. As stated above, a brief safety sweep and brief pat-down of a defendant does not amount to custody in a case, such as this, where the custodial level of control does not extend beyond the initial entry. <u>Hargrove</u>, 625 F.3d at 179. Thus, this factor weighs against a finding that there was a custodial interrogation.

Based on all of the factors taken together, and the totality of the circumstances, this Court finds that Barmore was not subject to a custodial interrogation.

## V.  <u>Conclusion</u>

Based on the analysis above, the report and recommendation of the magistrate judge is AFFIRMED and ADOPTED in its entirety. Accordingly, the defendant's motion to dismiss and motion to suppress are DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    April 9, 2015

<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE